## GEORGE D. MAYO MACHINE CO. v. HEMPHILL MFG. CO.

(Circuit Court of Appeals, First Circuit. December 16, 1919.)

### No. 1378.

PATENTS ⬤⟿328—FOR KNITTING MACHINE INVALID FOR WANT OF INVENTION.

The Mayo patent, No. 726,178, claims 23, 24, 38, 41, 43, 48, 49 and 130, for knitting machine improvements, *held* void for lack of invention.

Appeal from the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Infringement suit by the George D. Mayo Machine Company against the Hemphill Manufacturing Company. From a decree for defendant (247 Fed. 536), plaintiff appeals. Affirmed.

Hubert Howson, of New York City (Frederick P. Fish, of Boston, Mass., and Howson & Howson, of New York City, on the brief), for appellant.

Joseph C. Fraley, of Philadelphia, Pa. (James H. Thurston, of Providence, R. I., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a decree of the District Court for Rhode Island in an equity suit charging infringement of letters patent No. 726,178, issued to George D. Mayo, April 21, 1903, for an improvement in knitting machines and now owned by the plaintiff.

The defenses are noninvention, anticipation, noninfringement, and laches.

There are eight claims in issue. Two of them, Nos. 23 and 24, relate to certain parts of knitting machines known as "sinkers and their guides," and the remainder, Nos. 38, 41, 43, 48, 49, and 130, to what is termed the "transfer means." In the court below the bill was dismissed; all the claims being held invalid for want of patentable novelty. It was also held as to claims 38, 41, 43, 48, 49, and 130, that they should be limited to the precise construction shown and, when so limited, were not infringed.

The first two claims are as follows:

"23. In a knitting machine a sinker cylinder having radially arranged sinker guideways and a holddown portion above the same, combined with sinkers arranged in said guideways and having portions overlying said holddown portion.

"24. In a knitting machine, the combination, with sinkers each having a plurality of arms, of a sinker cylinder therefor provided with guideways open at both ends for both the arms of said sinkers."

From the language used in the first claim, read in connection with the "comparative chart of sinkers and supports" shown on page 187 of the record, it is evident that the elements there called for are as

follows: (1) Sinkers with two arms, an upper and a lower; (2) a sinker cylinder; (3) radially arranged sinker guideways in the sinker cylinder for the lower arms of the sinkers; and (4) a holddown portion of the sinker cylinder above the guideways for the lower arms.

In No. 24 the elements are: (1) Sinkers, each having at least two arms; and (2) a sinker cylinder provided with guideways for both arms of the sinkers, the guideways being open at both ends. The latter claim does not call for guideways for the upper arms of the sinkers separate and distinct from the guideways for the lower arms, and in every respect reads upon the device shown in patent No. 542,311, granted to Randall in 1895. In the Randall device each sinker has two arms. The sinker cylinder located at the top of the needle cylinder is provided with guideways for both arms of the sinkers, and the guideways are open at both ends. The combination of this claim being fully disclosed in the prior art, we regard it as lacking in patentable novelty and invalid.

Claim 23 does not specify that both arms of the sinkers should be provided with guideways in the sinker cylinder and open at both ends, as does claim 24. The only guideways called for in this claim are for the lower arms of the sinkers, and these guideways are not required to be open at both ends. In the prior art devices shown in the patents granted to Eck in 1894, No. 523,111, and to Burleigh in 1895, No. 537,802, both of which are substantially alike, all of the elements called for in this claim are disclosed, with the single exception of the guideways for the lower arms of the sinkers. They do, however, disclose guideways in the sinker cylinder for the upper arms of the sinkers, so that all the plaintiff's patentee can claim to have done differing from these prior art patents is to have provided guideways in the cylinder for the lower arms of the sinkers. Therefore the question is, inasmuch as these prior art patents disclose guideways for the upper arms of the sinkers in the sinker cylinder, was it invention to extend or elongate the lower arms and provide for them slots or guideways in the sinker cylinder? This is so plainly a matter of mechanical detail that we are constrained to agree with the District Court that the claim presents no patentable conception.

In the knitting of men's stockings or half hose, the ribbed tops are ordinarily knit on a separate machine and then transferred to the needles of a stocking machine for completion. To effect the transfer it is necessary to bring all of the needles of the stocking machine to a common level. Claims 38, 41, 43, 48, 49, and 130 relate to means for leveling the needles preparatory to transferring the ribbed top to them. Claim 28 is typical of this set of claims and reads as follows:

"38. A knitting machine provided with a double-acting stitch-forming cam and means to withdraw it bodily from operative engagement with the needles."

The elements embodied in this claim are (1) a double-acting stitch or depressing cam, and (2) means to withdraw it bodily from operative engagement with the needles.

The double-acting stitch or depressing cam is brought into action in the round and round knitting of the body of the stocking and in the reciprocating knitting of the heel and toe of the stocking. In round and round knitting it operates as a single depressing cam. In reciprocating knitting its double-acting feature is brought into play. It is then double-acting, in that it depresses the butts of the needles as they are being moved forward and back in the locality of the cam.

When the machine is stopped preparatory to transfer, the cam depresses the butts of the needles with which it is in contact and interferes with their being raised, so that the knitting ends of all the needles may be leveled to receive the ribbed top. To remove this obstruction the patentee provides means for withdrawing the cam bodily and radially from engagement with the needle butts.

A double-acting stitch or depressing cam for round and round knitting and for reciprocating knitting was old. O'Neil, No. 387,251 (1888). Means for removing an obstructing cam bodily and radially to enable the needles to be leveled were also old. This is shown in the patent to Gordon, No. 438,686. But the cam employed by Gordon was a double-acting elevating cam, instead of a double-acting depressing cam. The patent to Hemphill, No. 629,503, July 25, 1898, also discloses means for radially removing an obstructing cam preparatory to transfer. The cam used in the device of that patent, however, and which obstructs the leveling of the needles, is a single-acting depressing cam. The question, therefore, is whether, in view of the disclosures of the prior art, it involved invention for Mayo to have conceived the idea of removing bodily a double-acting depressing cam from engagement with the needles; the prior art having shown how a double-acting elevating cam and a single-acting depressing cam could be removed bodily to permit the leveling of the needles.

In the plaintiff's machine the normal position of the knitting ends of the needles is above the arms of the sinkers, and, in order to knit, a machine so constructed has to be supplied with a depressing cam which will draw down the needles for the first stroke operation. Consequently Mayo adopted a double-acting depressing cam, which would depress the needles when the machine was doing round and round knitting, and also when it was doing reciprocating knitting. In the Gordon patent, which antedates Mayo, the normal position of the knitting ends of the needles was below the ends of the sinkers, and to enable the machine to knit it was necessary to provide it with an elevating cam, which would thrust the needles up for the first stroke operation. He therefore provided a double-acting elevating cam for the first stroke in round and round knitting and in reciprocating knitting. Gordon's elevating cam was in the way, and had to be removed to permit the needles to be leveled. To do this he provided means which would withdraw the cam bodily and radially from the cam cylinder. Mayo's depressing cam was in the way in his machine and had to be removed to permit the needles to be leveled, so he provided means for withdrawing it bodily and radially, which differ, so far as inventive thought is concerned, in no way from that of Gordon. The

problem of removal was the same. In each case it was necessary to remove the obstructing cam to level the needles, because it was in the way, and, in each case, it was necessary to adopt an elevating or depressing cam because of the general construction of the respective machines.

In Hemphill, 1899, two single depressing cams were employed, one of which was an obstruction and had to be removed to permit the leveling of the needles. In both Hemphill and Gordon the obstructing cam was removed radially and bodily. In view of Gordon's and Hemphill's disclosures of means for the radial and bodily withdrawal of a double-acting elevating cam and a single-acting depressing cam from operative engagement with the needles, we do not think it involved invention for Mayo to make use of like means for the radial and bodily withdrawal of a double-acting depressing cam.

The decree of the District Court is affirmed, with costs to the appellee.